TALLMAN *v.* BOARD COMMISSIONERS NORTHERN ROAD IMPROVEMENT DISTRICT OF ARKANSAS COUNTY.

4-2560

Opinion delivered May 23, 1932.

*George C. Lewis,* for appellant.

*Ingram & Moher,* for appellee.

MEHAFFY, J. On May 9, 1931, the commissioners of Northern Road Improvement District of Arkansas County filed suit to enforce the payment of delinquent taxes alleged to be due the said district. To the complaint was attached an exhibit which was said to be a record of delinquent lands in said district, returned delinquent on June 9, 1930, for the nonpayment of taxes due thereon for the year 1929.

This record was properly certified to by the sheriff and collector of Arkansas County. The clerk of the chan-

cery court certified that the list was filed in his office August 29, 1930.

Warning order was published, and a number of the landowners of the district intervened, and interposed the defense that the suit was not brought within three years after said taxes became delinquent. There was a number of interveners, but the defenses interposed were identical.

Answers were filed to all the interventions, alleging that the lands in controversy stood forfeited to the State, and the district's right to proceed to collect the taxes was suspended because the lands had been sold to the State, and therefore the three years' statute did not apply.

There is no controversy about the facts, but only questions of law are involved. There appears to be some confusion and uncertainty about the law with reference to collection of improvement district taxes, and for that reason the law should be stated clearly, so that any doubt or uncertainty may be removed.

The Northern Road Improvement District of Arkansas County was created by act 247 of the Acts of 1919. Section 6 of this act provides for the assessment of benefits, and § 7 provides that the assessment shall be filed with the county clerk, and the secretary of the board shall give notice by publication for two weeks in a newspaper, published and having a *bona fide* circulation in the city of Stuttgart.

Said notice must advise the landowners of the filing of the assessment, and that it is open for inspection, and fix the time when they may be heard by the commissioners. The act permits a reassessment not oftener than once a year.

Section 13 of the act fixes the time when the assessments are payable between the first Monday in January and the 10th of April in each year. The section also provides that the collector shall not embrace such taxes in the taxes for which he shall sell the lands, but he shall report such delinquencies to the board of commissioners of said district, which shall add to the amount of tax a

penalty of 25 per cent., and said board of commissioners shall enforce the collection by chancery proceedings in the manner provided in §§ 23 and 24 of act 279 of the Acts of 1909. The owner has five years in which to redeem from said sale.

Appellee concedes that, if the improvement district could proceed to enforce or foreclose its lien before the assessments are formally returned as delinquent, then the three years' statute of limitations has run, and this case should be reversed.

Section 6695 of Crawford & Moses' Digest provides that the words "forfeited" and "forfeiture" shall be construed to mean and apply to lands which were sold for nonpayment of taxes according to law, etc.

This court has said: "Of course, the forfeiture to the State of lands for general taxes necessarily suspends the enforcement of the special tax lien as long as the title remains in the State, but, as the lien, under the terms of the statute, is not extinguished, and continues until the special taxes are paid, the same can be enforced when the land goes back into private ownership. This construction of the statute gives full recognition to the State's paramount right of taxation, and in nowise detracts from the dignity and power of the State as against subordinate governmental agencies." *Turley* v. *St. Francis County Road Imp. Dist. No. 4,* 171 Ark. 939, 287 S. W. 196.

This court, in a later case, said: "Sale to the State of lands for nonpayment of general taxes suspends the enforcement of the special road tax lien so long as the title remains in the State; but such lien, under Crawford & Moses' Digest, § 5433, may be enforced when the land goes back to private ownership." *Wyatt* v. *Beard,* 179 Ark. 305, 15 S. W. (2d) 990.

In the case above cited the sales to the State were valid. These cases were referred to and the rule announced by them approved in *Hopper* v. *Chandler,* 183 Ark. 469, 36 S. W. (2d) 398.

The appellant suggests that the court, in its former decision, overlooked § 2 of act 261 of the Acts of 1925.

That act, however, applies only to road improvement districts which embrace lands in five or more counties, and therefore has no application here.

The lien for improvement district assessments shall be in the manner provided in §§ 23 and 24 of act 279 of the Acts of 1909. These sections provide that the assessments shall be payable between the first Monday in January and the 10th day of April in each year. The act then provides that the collector shall report delinquencies to the board of commissioners; that they shall add the penalty, and enforce the collection by a suit in the chancery court.

The question is, when did the lands become delinquent? There can be no doubt that the assessments are payable between the first Monday in January and the 10th day of April.

Section 4 of act 534 of the Acts of 1921 is as follows: "When the board of commissioners, or any one authorized by law to file suit for the collection of such delinquent taxes, desires to commence said suit, they shall obtain a certified copy of said list from said clerk, which shall be filed with the complaint and taken as a part thereof, and the clerk, for making said list, shall be entitled to ten cents per tract, which shall be taxed as costs in said suit. No suit for the collection of such delinquent taxes shall be brought after three years from date same became delinquent."

It appears from that act that, whether the taxes have been extended or whether the collector has made any report, the board of commissioners, if they desire to commence suit, shall obtain a certified copy of the list from said clerk, and file this list with the complaint, and it will be observed that under said section no suit shall be brought after three years from the date same became delinquent. When the law fixes a day for the payment of taxes, and the taxpayer fails to pay on or before that day, he is delinquent. These acts themselves indicate that, because they require the sheriff to report the delinquency. Unless they were delinquent, there would be no delin-

quency to report, and a delinquent tax means a tax overdue and unpaid.

"To constitute a legally delinquent tax on land, three things are necessary: First, that the land is subject to taxation; second, that a tax authorized by law has been levied on it in the manner provided by law; third, that the tax remains unpaid after the time appointed by law for its payment. To make out a tax delinquent, each of these things must be shown—each is as essential as either of the others." *Chauncy* v. *Wass,* 35 Minn. 1, 30 N. W. Rep. 826; 18 C. J. 475.

It seems clear that when the statute fixes the 10th of April as the last day for payment, and provides that the commissioners may secure the list from the clerk before bringing suit, the intention is to authorize suit to be brought at any time within three years after the failure to pay at the time the taxes are due.

We have heretofore held that when lands have been sold to the State, the lien for assessments was suspended, and could be enforced after the lands went back to private ownership. Of course, this meant valid sale. A void sale would not suspend the statute because if void, it is a nullity, binding on no one. But if the collection of improvement district assessments is suspended by a valid sale to the State and not by a void sale, the commissioners would be required to determine in each instance whether a tax sale was valid or void. This, in many instances, might require expensive lawsuits because, in many instances, no one could say whether the sale was void or not.

We therefore hold that, when taxes are not paid at the time fixed by law, they are delinquent, and the commissioners may secure the certified list from the clerk and proceed to enforce collection. If the lands have been sold to the State, the sale for improvement district taxes will be subject to the paramount right of the State. There can then be no confusion or doubt about the time and manner of inforcing liens for assessments in improvement districts.

When all the acts are considered together, it seems clear that this was the intention of the Legislature.

In this case, three years having elapsed after the taxes became delinquent before suit was brought, such suit was barred by the three years statute of limitations.

The decree of the chancery court is therefore reversed, and the cause remanded with directions to dismiss the complaint.